*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN J. WILCOX,

      Plaintiff-Appellant,

v

DAMIAN WHEATLEY, RONALD ALLEN
SMITH, VINCENT OVALLE, and MICHAEL
SCOTT BARBER,

      Defendants-Appellees.

FOR PUBLICATION
August 11, 2022

No. 358630
Ionia Circuit Court
LC No. 2021-034813-CZ

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

SWARTZLE, P.J. (*concurring in part, dissenting in part, and concurring in the judgment*)

I agree with much of Judge GARRETT's well-written opinion for the majority. I write separately to emphasize one aspect of the Court's decision today, as well as set out one quibble with the majority's analysis. With respect to the former—and giving due regard to the fact that plaintiff is acting *pro se*—the factual allegations here do not involve the action or inaction of any prison official or agent. I can envision a hypothetical set of facts involving a prison guard "looking the other way" while inmates assault and rob a fellow inmate, or another hypothetical set of facts involving officials who failed to act in the face of a rash of inmate-on-inmate assaults and robberies. Under either of those hypothetical sets, the victim might well have to exhaust administrative remedies before pursuing a cause of action under Michigan's prison litigation reform act (PLRA), MCL 600.5501 *et seq*. As alleged here, however, this appears to be an isolated tort between inmates, and thus I agree with the majority that this lawsuit is not subject to the PLRA's administrative-exhaustion requirement. MCL 600.5503(1).

Turning to my one quibble: This appeal comes down to what our Legislature meant by the phrase "conditions of confinement" when it enacted the PLRA in 1999. MCL 600.5531(a). This phrase has a meaning fixed at the time of enactment, such that the phrase can provide ongoing, practical, *meaningful* guidance and instruction to prison officials and agents as well as inmates. See *Cain v Waste Mgt, Inc*, 472 Mich 236, 247; 697 NW2d 130 (2005); *West Mich Annual Conference of the United Methodist Church v City of Grand Rapids*, 336 Mich App 132, 143 n 5, 148-149; 969 NW2d 813 (2021); see also Scalia & Garner, *Reading Law: The Interpretation of*

*Legal Texts* (St. Paul: Thomson/West, 2012), p. 78-92.  If issues arise with application of the plain language of statutory text to particular circumstances, then our Legislature can consider amending the PLRA.  See *Rouch World, LLC v Dep't of Civil Rights*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162482), slip op at 28 ("Again, the Legislature's failure to foresee particular statutory applications does not prohibit these applications so long as they are consistent with the plain language of the statute.  Should the Legislature disapprove of an application of a statute's enacted language, the Legislature remains free to amend the statute."); *TruGreen Ltd Partnership v Dep't of Treasury*, 332 Mich App 73, 116; 955 NW2dd 529 (2020) (Swartzle, J., dissenting), vacated 507 Mich 950 (2021) ("Our role, rather, is to interpret and apply the statute as written, and when, as here, the text has a plain meaning, supported by context and history, then it is that plain meaning that we should apply. Once we have laid the particular consequence bare, it is up to the Legislature to determine whether it intends the consequence to endure or not.").  Given this, I agree with the majority that we should look to the statutory text and context, legal and lay dictionaries, and even case law interpreting the federal counterpart to our PLRA enacted by Congress in 1995.  See 42 USC 1997e *et seq*.

Where I depart, however, is that unlike the majority, I do not glean anything helpful for understanding the meaning of "conditions of confinement" as used in the PLRA from case law interpreting the federal Eighth Amendment's prohibition on "cruel and unusual punishment."  US Const, Am VIII.  Whether one views this body of constitutional law as divining the evolving, devolving, or even revolving "standards of decency," what one cannot say is that there is a clear, fixed standard.  As we have seen in the past and present, the coherence of case law interpreting the Eighth Amendment and our 1963 Constitution's related art 1, § 16, is largely in the eye of whichever beholder is then beholding.  See, e.g., *Farmer v Brennan*, 511 US 825, 858-862; 114 S Ct 1970; 128 L Ed 2d 811 (1994) (Thomas, J, concurring in the judgment) (describing the ever-changing "deliberate indifference" standard as applied to "conditions of confinement" constitutional torts); cf *People v Parks*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162086) (Clement, J., dissenting) (noting that, in declaring that a sentence of mandatory-life-without-the-possibility-of-parole for an 18 year-old adult convicted of first-degree murder was "cruel or unusual punishment" under 1963 Const art 1, § 16, the majority relied not on a fixed understanding of the law, but rather on ever-changing policy considerations—including the majority's understanding of today's state of neuroscience and social-science research—and explaining that these evolving policy matters were more appropriately left to the representative body closest to the people, the body designed to resolve policy debates, i.e., our Legislature).

I would jettison this part of the majority's analysis as, at best, unnecessary and unhelpful, and, at worst, sowing an unwelcome seed of uncertainty into our PLRA.

Accordingly, I concur in part with the majority's analysis and in full with its judgment, though I dissent with respect to the majority's application of federal Eight-Amendment jurisprudence to the question of interpretation of a Michigan statute.

/s/ Brock A. Swartzle